[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11943
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 28, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:08-cv-01217-MMH-JRK

KENNETH W. LILES, PATRICIA M. LILES, EDWARD R. WEBB,
JAMES JOSEPHSON, WILLIAM J. ANDREWS, JR., MARK R. ROODVOETS,
JON D. ANDREWS, CHARLES B. LESESNE, JERRY A. CICOLANI, JR.,
KRIS BRENEMAN, DANA F. BALLINGER, SUSAN KHERKHER,
THOMAS E. LAMMERTSE, MARY L. SIPSKI, RONALD P. VAN, as trustee
of the Ronald P. Van Jr. Revocable Trust,
KATHY JO VAN, as trustee of the Kathy Jo Van Revocable Trust,

Plaintiffs - Appellants,

versus

GINN-LA WEST END, LIMITED,
ROBERT F. MASTER, II,
EDWARD R. GINN, III

Defendants - Appellees,

GINN FINANCIAL SERVICES, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 28, 2011)

Before TJOFLAT, CARNES and HILL, Circuit Judges.

PER CURIAM:

This appeal involves the interaction of the specific terms in a series of land purchase contracts and the anti-waiver and venue provisions of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq. ("ILSA"). The plaintiffs, individually and collectively, purchased undeveloped land in the proposed Versailles Sur Mer subdivision on Grand Bahamas Island from Ginn-La West End, Ltd. ("Ginn-La"), a Bahamas corporation with its principal place of business in Florida. Before the district court, the plaintiffs sought rescission of those purchase contracts and damages, all pursuant to ILSA, as well as common law relief, claiming that Ginn-La and its principals had either failed to disclose or affirmatively concealed material facts relating to the individual properties' titles and the likelihood of the subdivision's completion.

The defendants moved the district court to dismiss the plaintiffs' complaint[1] pursuant to Federal Rules of Civil Procedure 12(b)(3), for improper venue, and 12(b)(6), for failure to state a claim for which relief may be granted. At the core of the defendants' motion to dismiss was a paragraph in the purchase contracts containing a forum-selection clause designating the Bahamas as the exclusive venue for any litigation "concerning the interpretation, construction, validity, enforcement, performance of, or related in any way to, this Contract or any other agreement or instrument executed in connection with this Contract," and a choice of law provision identifying Bahamian law as controlling.

The district court considered the forum-selection clause, found venue was foreclosed in the Middle District of Florida, and granted the appellees' motion pursuant to Federal Rule of Civil Procedure 12(b)(3).[2] The plaintiffs appeal the district court's ruling. Their principal contention is that the district court's enforcement of the forum selection clause deprived them of their right to chose the venue for their ILSA claims and is contrary to public policy as announced in M/S Bremen v. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972), and Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1283

_____

[1] We refer to the amended complaint as the complaint.

[2] The district court's order, Liles v. Ginn-La West End, Ltd., No. 3:08-cv-1217-MMH-JRK (M.D. Fla. March 30, 2010), is unpublished.

3

(11th Cir. 1998). We disagree and therefore affirm the court's judgment for the reasons stated in its dispositive order, which is annexed as an Appendix.

AFFIRMED.

APPENDIX

## ORDER

**THIS CAUSE** is before the Court on Defendants Ginn-La West End, Limited, Ginn Financial Services, Robert F. Masters II, and Edward R. Ginn, III's (collectively Ginn Defendants[2]) Motion to Dismiss Plaintiffs' Second Amended Complaint and Incorporated Memorandum of Law in Support (Doc. No. 77; Motion), filed on August 17, 2009. On July 29, 2009, Plaintiffs filed an eleven-count Second Amended Complaint and Demand for Jury Trial (Doc. No. 71; Complaint). Plaintiffs' claims stem from their respective contracts to purchase undeveloped parcels of real property in the Versailles Sur Mer subdivision on Grand Bahama Island (VSM subdivision) from Defendant Ginn-La West End, Limited (Ginn-La), a Bahamian Corporation with its principal place of business in Florida. See Complaint at 2-5; see also Contracts, attached as Exhibits C-K to Complaint. In counts one through

---

[2] Although the Court recognizes that Plaintiffs have asserted only one claim against Defendant Ginn Financial Services, for simplicity, unless otherwise noted, the Court refers collectively to Defendants as the "Ginn Defendants."

three and five through seven of the Complaint, all Plaintiffs assert claims under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq. (ILSA) against all Ginn Defendants except Defendant Ginn Financial Services (Ginn Financial).[3]  In count four, all Plaintiffs except Plaintiffs Thomas E. Lammertse and Mary L. Sipski assert an ILSA claim against all Ginn Defendants except for Ginn Financial.  In count eight, Plaintiff Dana L. Ballinger (Ballinger) asserts an ILSA claim against all Ginn Defendants except for Ginn Financial.  In count nine, Plaintiffs Ballinger and James Josephson (Josephson) assert an ILSA claim against all Ginn Defendants except Ginn Financial.  Finally, in count ten, all Plaintiffs assert a claim for conspiracy to defraud against all Ginn Defendants.[4]  In the instant Motion, the Ginn Defendants move to dismiss all claims against them.  The Ginn Defendants first seek dismissal of the Complaint for improper venue under Rule 12(b)(3), Federal Rules of Civil Procedure (Rule(s)), arguing that the Plaintiffs' contracts contain enforceable forum-selection clauses designating the exclusive venue for the instant litigation to be in the Bahamas.  See Motion at 5-8.  Alternatively, the Ginn Defendants argue that one or more of Plaintiffs' claims

---

[3]       ILSA "is a consumer protection statute that 'was intended to curb abuses accompanying interstate land sales.'" Stein v. Paradigm Mirasol, LLC, 586 F.3d 849, 853 (11th Cir. 2009). It is a comprehensive statute with an elaborate scheme of accompanying regulations. See 15 U.S.C. § 1701 et seq.; 24 C.F.R. § 1710 et seq. Utilizing "'disclosure as its primary tool' to discourage fraud[,]" ILSA "requires developers selling or leasing property to provide the purchaser with a property report before the sales contract is signed. If the developer fails to provide a property report, the purchaser generally has the right to revoke the contract." Stein, 586 F.3d at 853 (internal citations omitted). In addition to the specific disclosure regulations pertaining to the property report, ILSA "also contains a general anti-fraud provision that makes it illegal to obtain money or property in connection with a development by means of a material false statement or any omission of a material fact necessary to make the statements made not misleading." Rice v. Branigar Org., Inc., 922 F.2d 788, 791 n.4 (11th Cir. 1991) (citation omitted).

[4]       Plaintiffs previously asserted one or more claims against Defendants Stewart Title Guaranty Company, Picket Fence Realty, and Simon L. Conway, but all such claims have been resolved. See Doc. Nos. 130, 142, 186.

should be dismissed under Rule 12(b)(6) for failure to state a claim entitling them to relief, that one or more of Plaintiffs' claims sound in fraud but are not plead with particularity as required by Rule 9(b), and that Plaintiffs contractually released all Ginn Defendants except Ginn-La from liability. See Motion at 8-25. Plaintiffs oppose all of the requested for relief set forth in the Motion, see Plaintiffs' Opposition to Motion to Dismiss Filed by Ginn-La West End, Limited; Ginn Financial Services; Stewart Title Guaranty Company; Robert F. Masters, II; and Edward R. Ginn, III (Doc. No. 78; Response), and have filed numerous declarations in support of their position, see Doc. Nos. 79-94.[5] Thus, the issues in the Motion are now fully briefed and ripe for resolution. Because the venue issue is dispositive, the Court need not address the Ginn Defendants' remaining arguments for dismissal.

## I.     Background[6]

Ginn-La engaged in the development and sale of lots in the VSM subdivision. See Complaint at 5.[7] Plaintiffs reside in various states throughout the United States. See id. at 2-4. Between 2006 and 2007 Plaintiffs purchased lots within the VSM subdivision from Ginn-

---

[5]     Unlike with a Rule 12(b)(6) motion to dismiss, the Court may consider materials outside the pleadings without converting a Rule 12(b)(3) motion to dismiss to a motion for summary judgment. See Rule 12(d); see also Sucampo Pharms., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 549-50 (4th Cir. 2006); Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996); National Numismatic Certification, LLC. v. eBay, Inc., No. 6:08-cv-42-Orl-19GJK, 2008 WL 2704404, at *8 (M.D. Fla. July 8, 2008); Ford v. Supreme Court of Fla., No. 6:06-cv-3-Orl-31JGG, 2006 WL 1382075, at *4 n.8 (M.D. Fla. May 18, 2006).

[6]     Because the Court resolves the instant Motion on the basis of a forum-selection clause designating venue exclusively in the Bahamas, the Court need not extensively recite the substantive facts of the case.

[7]     Defendant Robert F. Masters II (Masters) is Ginn-La's President, and Defendant Edward R. Ginn III (Bobby Ginn) is its Chairman. See id. at 5-6.

3

La.[8] Paragraph twenty-two of each sales contract contains an identical forum-selection clause purporting to designate the Bahamas as the exclusive venue for any legal action "concerning the interpretation, construction, validity, enforcement, performance of, or related in any way to, this Contract or any other agreement or instrument executed in connection with this Contract." See Contracts, attached as Exhibits C-K to Complaint, at ¶ 22. The enforceability and applicability of this forum-selection clause dictates whether venue is proper in this Court.

## II.    Applicable Law

"Motions to dismiss upon the basis of choice-of-forum and choice-of-law clauses" that purport to require litigation in a foreign county are properly analyzed as motions to dismiss for improper venue under Rule 12(b)(3). See Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir. 1998); see also Hollis v. Fla. State Univ., 259 F.3d 1295, 1300 n.5 (11th Cir. 2001). "Because '[w]e cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts,'" the Eleventh Circuit Court of Appeals has recognized that "forum-selection and choice-of-law clauses 'are presumptively valid where the underlying transaction is fundamentally international in character.'" Lipcon, 148 F.3d at 1291, 1295 (quotations omitted). The party seeking to avoid the forum-selection clause bears "a heavy burden of proof." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 17, 19 (1972). Nevertheless, this

---

[8]    Some Plaintiffs purchased lots individually, while others did so together. For example, Plaintiff James Josephson individually purchased lot 493 in the VSM subdivision. See Complaint at 3, 24-25. Plaintiffs William J. Andrews, Jr., Mark R. Roodvoets, Jon D. Andrews, and Charles B. Lesesne collectively purchased lot 272. See id. at 3, 25.

4

presumption of validity may be overcome "by a clear showing that the clauses are unreasonable under the circumstances." Lipcon, 148 F.3d at 1295 (quotation and internal quotation marks omitted).   As such, forum-selection clauses are unenforceable as "'unreasonable under the circumstances'" only where:

> (1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy.

Id. at 1296 (citation omitted). Developed from the Supreme Court's decision in Bremen, this four-factored framework for determining whether a choice clause is unenforceable is known as "the Bremen test." See Lipcon, 148 F.3d at 1292, 1295-96.

### III.    Analysis

### 1.    The forum-selection clauses are enforceable

At the outset, the Court finds that the contracts and underlying transactions in this case are "truly" and "fundamentally" international. See id. at 1293 & n.14, 1295. Plaintiffs, the buyers in the respective contracts, are all American residents, see Complaint at 2-4, whereas Defendant Ginn-La, the seller in each contract, is a Bahamian corporation, see id. at 5, 24-27; see also Contracts, attached as Exhibits C-K to Complaint. The contracts were negotiated in the United States, but the closings apparently took place partially in the United States and partially in the Bahamas. See Complaint at 23. Finally, and perhaps most importantly, the subject matter of the contracts each concerns the sale of real property in the Bahamas. See id. at 2-4.   Accordingly, the contracts are truly international, and the

5

enforceability of the choice clauses therein is governed by the Bremen test. See Lipcon, 148 F.3d at 1293 n.14 (finding it "clear that the agreement in this case is 'truly international,'" where "the parties to the agreement are from different countries, the negotiations leading up to the agreement took place in the United States whereas the closing took place in England, and the subject matter of the transaction concerned investment in an international insurance market").

Plaintiffs in this case argue that the forum-selection clauses are unreasonable under three of the four Bremen factors—specifically, that the clauses are the product of fraud and overreaching, that they will deprive Plaintiffs of a full and fair hearing of their ILSA claims,[9] and that they contravene the strong public policy articulated in ILSA. See Response at 2-12. The Court addresses these arguments in turn. However, before applying the Bremen factors, the Court briefly considers whether the forum-selection clauses at issue are negotiated or non-negotiated, and also addresses the contractual specifications as to the governing law.

The analysis with respect to whether a forum-selection clause is enforceable varies slightly depending on whether the clause was negotiated or non-negotiated. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 592-93 (1991) (contrasting analysis of negotiated forum-selection clause with non-negotiated forum-selection clause). Although the same general analysis applies—both negotiated and non-negotiated forum-selection clauses are presumptively valid and will be invalidated only upon a strong showing that one of the four

---

[9]     It is unclear to the Court whether this argument is tailored to the second or third Bremen factor.

6

factors in the <u>Bremen</u> test makes the clause at issue unreasonable—with respect to non-negotiated forum-selection clauses, courts consider "whether the clause was reasonably communicated to the consumer" by employing a "two-part test of 'reasonable communicativeness[,]'" which "takes into account the clause's physical characteristics and whether the plaintiffs had the ability to become meaningfully informed of the clause and to reject its terms." <u>Krenkel v. Kerzner Int'l Hotels Ltd.</u>, 579 F.3d 1279, 1281 (11th Cir. 2009) (per curiam).

The Court finds that the contracts at issue were freely negotiated and that the traditional <u>Bremen</u> test applies. Although the forum-selection clauses, and indeed the entire contracts, are nearly identical, there is no indication from Plaintiffs that they were not the product of free negotiation.  In contrast to the terms of a cruise ticket forced upon a consumer with limited bargaining power, <u>see</u> <u>Shute</u>, 499 U.S. at 593, the instant contracts concerned sophisticated real estate transactions involving large sums of money—Plaintiffs' purchase prices ranged from $525,900 (Van) to $1,370,900 (Webb).  <u>See</u> <u>Muzumdar v. Wellness Int'l Network, Ltd.</u>, 438 F.3d 759, 762 (7th Cir. 2006) (distinguishing <u>Shute</u> and rejecting contention that contract was one of adhesion, noting that "[t]he appellants were parties to a somewhat sophisticated business deal" and finding it "hard to conclude that they would have signed a contract worth more than $100,000 without considering its provisions"). Indeed, the Webb contract contains alterations—seemingly favorable to the buyer—that eliminate one provision of the contract and add others.  <u>See</u> Webb Contract, attached as Exhibit D to Complaint at 2, 18, 22.

In the alternative, even if the forum-selection clauses were non-negotiated, the Court would find the "two-part test of 'reasonable communicativeness'" satisfied. The forum-selection clause in each contract is not hidden; is set apart in a separate paragraph preceded by the all-caps heading "GOVERNING LAW; VENUE"; and is set forth in the same size and font as the surrounding paragraphs. See e.g. Webb Contract at 14; see also Krenkel, 579 F.3d at 1281-82. Additionally, the contracts contain an all-caps provision advising the buyer to read the contract carefully and consult an attorney prior to signing it, and another all-caps provision advises the buyer to carefully review all terms, conditions, provisions, disclaimers, and disclosures in the contract. See e.g. Webb Contract at 9, 18. Accordingly, the Court rejects Plaintiffs' suggestion that the forum-selection clauses are unenforceable based on the contention that they were not conspicuously set forth in the contracts or "distinguished or set off from the surrounding paragraphs in any way." See Response at 5.

Forum-selection clauses are often, but not always, designed to specify not only the site, but also the applicable law, for a given dispute. See Lipcon, 148 F.3d at 1291-92 (citing Bremen, 407 U.S. at 14 n.15); see also Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.13 (1974). In the instant action, in conjunction with designating the Bahamas as the forum for any litigation, the parties agreed that Bahamian law would "govern the interpretation, application, enforcement, performance of, and any other matter related to" each contract. See Contracts, attached as Exhibits C-K to Complaint, at ¶ 22. Nevertheless, the contracts explicitly incorporate, and confer on Plaintiffs, ILSA-based rescission rights under United

8

States law.   Specifically, each contract contains the following "**HUD DISCLOSURE**" immediately above the signature line:

> **YOU HAVE THE OPTION TO CANCEL THIS CONTRACT BY NOTICE TO SELLER UNTIL MIDNIGHT OF THE SEVENTH DAY FOLLOWING THE SIGNING OF THIS CONTRACT.**
>
> **IF YOU DID NOT RECEIVE A PROPERTY REPORT PREPARED PURSUANT TO THE RULES AND REGULATIONS OF THE OFFICE OF INTERSTATE LAND SALES REGISTRATION, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, IN ADVANCE OF SIGNING THIS CONTRACT, THIS CONTRACT MAY BE REVOKED AT YOUR OPTION FOR TWO YEARS FROM THE DATE OF SIGNING.**

Id. at 19, unnumbered paragraph.  In accordance with this HUD disclosure, each Plaintiff received a Property Report prior to signing the applicable contract.[10]  The cover page of each Property Report advises that "United States Federal law requires that you receive this Report prior to your signing a contract or agreement to buy or lease a Lot (defined below) in this Subdivision."  Thus, although the contracts specify application of Bahamian law, they also expressly invoke ILSA-based United States law and confer corresponding ILSA benefits and rights on Plaintiffs.  In sum, irrespective of the venue and choice of law provisions, there is no dispute that the contracts incorporate ILSA disclosure rights and remedies.  See Motion at 8 n.3 (acknowledging that "[t]he venue provision merely states a venue; it does not waive compliance with ILSA").  The question requiring the Court's resolution is whether the forum-

---

[10]   Two separate Property Reports were prepared for the VSM subdivision, one dated June 28, 2006, the other September 12, 2006.  See Complaint at 40.  Some of the Plaintiffs received the first Property Report, and others received the latter.  The two versions of the Property Report do not differ materially with respect to any issue of consequence in the instant Motion.

selection clauses, purporting to mandate that the venue for Plaintiffs' ILSA claims be confined exclusively to the Bahamas, are enforceable.

Turning to the Bremen factors, Plaintiffs first argue that the forum-selection clauses were the product of fraud and overreaching. See id. at 2-7.[11]  Given the specific contractual incorporation of United States ILSA rights through the HUD Disclosures and corresponding Property Reports, were the Ginn Defendants seeking to rely on the choice of law provision to apply only Bahamian law to the exclusion of ILSA, the Court might agree.  But this is not the case.  As previously discussed, the Ginn Defendants do not rely on the choice clauses to dispute ILSA's applicability to Plaintiffs' claims in the action at bar.  They merely contend that the contracts designate the exclusive venue for Plaintiffs to bring any claim, including one seeking to enforce ILSA rights, as the Bahamas.  Thus, the Court rejects Plaintiffs' characterization of the inclusion of both the HUD Disclosure and the choice clauses as a "gotcha" tactic designed to mislead the Plaintiffs into believing they were protected by ILSA's rescission rights while at the same time precluding application of those rights through the exclusive application of Bahamian law.   Accordingly, the Court determines that Plaintiffs have not made a "clear showing" that the forum-selection clauses should be set aside as the product of fraud or overreaching.  See Lipcon, 148 F.3d at 1295-96.[12]

---

[11]      To be unenforceable, the inclusion of the choice clause itself must be the product of fraud—more general claims of fraud will not defeat a choice clause and are properly litigated in accordance with the parties' contractually chosen forum.  See Lipcon, 148 F.3 at 1296.

[12]      Although the tension between Bahamian law and the contractual invocation of ILSA is Plaintiffs' primary argument for finding the forum-selection clause fraudulent and unenforceable, Plaintiffs have also set forth several additional arguments.

First, Plaintiffs argue that the Property Reports did not disclose that legal action would be

(continued...)

10

Plaintiffs next argue that because "U.S. courts are uniquely positioned to adjudicate ILSA claims[,]" if Plaintiffs are forced to bring ILSA-related claims in the Bahamas they will be "sorely prejudiced and effectively deprived of the opportunity for a full and fair hearing of those claims." See Response at 8. It is unclear whether Plaintiffs aim this argument toward the second or third Bremen factor.   Indeed, Plaintiffs argue neither that the chosen forum would deprive them of their day in court due to the unfairness or inconvenience of a Bahamian forum, nor that the applicable law would deprive them of a remedy. See Lipcon,

---

[12](...continued)
required to be taken in the Bahamas, contrary to the disclosure requirements of 24 C.F.R. § 1710.116(e)(2). See Response at 6. Whatever merit this argument may have as to the validity of the Property Reports, given that the forum-selection clauses were conspicuously set forth in the contracts themselves, the Court declines to find that such an omission in the Property Reports clearly shows that the contractual forum-selection clauses were procured by fraud. See Lipcon, 148 F.3 at 1296 (recognizing that to be unenforceable, the inclusion of the choice clause itself must be the product of fraud).

Second, Plaintiffs argue that all Plaintiffs other than Ronald P. Van and Kathy Jo Van executed mortgage notes with Defendant Ginn Financial which include Florida choice-of-law and venue provisions, and that the Ginn Entity that issued these notes, Bahamas Sales Associate LLC, has filed several federal lawsuits in Florida against defaulting borrowers not parties to the instant case. See Response at 6-7. The Court does not consider this evidence of fraud, but will consider these arguments below when addressing the issue of fundamental fairness.

Finally, the Court notes that in the Complaint, Plaintiffs set forth a series of conclusory and unsubstantiated allegations purporting to demonstrate the forum-selection clauses are the product of fraud and unenforceable. See Complaint at 27-30. For example, Plaintiffs allege that
> [n]o Plaintiffs were ever informed or acknowledged that, upon information and belief, Defendants GINN-LA and BOBBY GINN, alone or in conjunction with some other Ginn entities, did make and continue to make gifts and contributions to the Bahamian government and/or Bahamian officials, which gifts and contributions were and are intended to induce the Bahamian government to offer concessions and cooperation in connection with the development and operation of the VSM Subdivision

See id. at 29. They further allege that "upon information and belief, as a result of these same commitments, gifts and contributions . . . the GINN DEFENDANTS have also sought and obtained favorable treatment from the Bahamian courts and/or court officials" and that "in light of the influence exerted by the GINN DEFENDANTS over Bahamian courts and/or court officials . . . the Bahamian court system would be an unfair forum" for Plaintiffs to bring their claims. See id. at 30. Upon review, the Court determines that many of the allegations are not indicative of any fraud, and none—all based on information and belief—are sufficiently substantiated by fact. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1268 (11th Cir. 2009). Moreover, other than in connection with the arguments already discussed above, Plaintiffs have not relied on or cited to any of these allegations in their Response in opposition to the instant Motion. Accordingly, the Court finds any remaining fraud-based argument for avoiding the forum-selection clauses to be inadequate and, in the alternative, waived.

11

148 F.3d at 1296. Plaintiffs have not identified any differences between the law to be applied domestically or in a Bahamian forum so as to make their remedies inadequate if they are forced to litigate in the Bahamas. See generally Response. Indeed, the only rights Plaintiffs contend are jeopardized by the forum selection clause are those pertaining to rescission and venue under ILSA. See id. at 5-6. With respect to rescission rights, as previously noted, the contracts incorporate ILSA disclosure obligations and rescission rights, and the Ginn Defendants acknowledge that Plaintiffs have not waived their substantive rights under ILSA. Thus, whether litigated in Florida or the Bahamas, the available remedies pertaining to rescission are coextensive.

Moreover, the Court declines to find that a waiver of venue rights renders Plaintiffs' remedies so inadequate as to make a Bahamian forum fundamentally unfair. See Lipcon, 148 F.3d at 1297 ("We will not invalidate choice clauses . . . simply because the remedies available in the contractually chosen forum are less favorable than those available in the courts of the United States. Instead, we will declare unenforceable choice clauses only when the remedies available in the chosen forum are so inadequate that enforcement would be fundamentally unfair."). Rather than tailor their argument to either the second or third Bremen factors, Plaintiffs, in a somewhat condescending manner, contend that Bahamian courts are ill-equipped to adjudicate claims requiring "complex analyses of ILSA's applicability and interpretation of ILSA's requirements." See Response at 8. This parochial sentiment, however, runs contrary to the international comity concern underlying Bremen. See Lipcon, 148 F.3d at  1294; see also Scherk, 417 U.S. at 508, 519-20 (holding

12

enforceable, in dispute arising from international commercial transaction, arbitration agreement[13] requiring disputes to be arbitrated in France applying laws of the state of Illinois).[14] Accordingly, the Court finds that Plaintiffs have failed to carry their heavy burden of showing that a Bahamian forum would deprive them of a full and fair hearing so as to make the forum-selection clause unreasonable.

Plaintiffs finally argue that enforcing the choice clause would contravene strong public policy as set forth in ILSA. See Response at 8-12. Specifically, Plaintiffs argue that application of the forum-selection clause would violate a venue provision and an anti-waiver provision in ILSA. See id.[15] ILSA's venue provision, 15 U.S.C. § 1719, provides in pertinent part that an ILSA suit

> may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

---

[13]   "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." Id. at 519.

[14]   The Court recognizes that Scherk's references to Bremen "were made to emphasize the Court's rejection of a provincial approach in favor of the policy of giving effect to the agreement of the parties in international transactions, not to incorporate the Bremen standards wholesale to situs selections in arbitration clauses." Sam Reisfeld & Son Import Co. v. S. A. Eteco, 530 F.2d 679, 681 (5th Cir. 1976); see also Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981). Scherk is nevertheless instructive in interpreting and applying Bremen, and its underlying policies, to the case at bar. See Lipcon, 148 F.3d at 1292-97.

[15]   Although Plaintiffs argue that the forum-selection clause contravenes public policy as set forth both in the venue and anti-waiver provisions of ILSA, the analysis collapses to a single inquiry. This is so because, as previously discussed, the Ginn Defendants represent to the Court that, other than the explicit venue waiver, they do not contend that Plaintiffs have implicitly waived or have purported to waive the substantive obligations under ILSA which Defendants undertook in the contracts.

13

The anti-waiver provision, 15 U.S.C. § 1712, provides that "[a]ny condition, stipulation, or provision binding any person acquiring any lot in a subdivision to waive compliance with any provision of this chapter or of the rules and regulations of the Secretary shall be void." Plaintiffs argue that these two provisions render the forum-selection clauses in their contracts void as contrary to public policy insofar as the forum-selection clauses effectively waive Plaintiffs' substantial right to choose the forum of their ILSA lawsuit. Were this a domestic transaction, Plaintiffs' argument would be well taken. See e.g., Boyd v. Grand Trunk W. R.R. Co., 338 U.S. 263, 264-65 (1949) (per curiam); Thomas v. Rehab. Servs. of Columbus, Inc., 45 F. Supp. 2d 1375, 1379-81 (M.D. Ga. 1999). The argument is less persuasive, however, in the context of an international agreement. Instead, the Court finds Lipcon instructive.

In Lipcon, the Eleventh Circuit Court of Appeals addressed the "question of whether the anti-waiver provisions of the United States securities laws preclude enforcement of certain choice-of-law and forum-selection clauses . . . in international agreements." See Lipcon, 148 F.3d at 1287.[16] Acknowledging that the choice clauses "may operate 'in tandem' as a prospective waiver of the statutory remedies for securities violations," the Eleventh Circuit nevertheless held that the choice clauses were enforceable and not contrary to public policy. See id. at 1287, 1298 (quotation and internal quotation marks omitted). In so holding, the court recognized "that international agreements—even those that render United States securities law inapplicable—are sui generis" and that "a choice-of-forum clause is 'an almost indispensable precondition to achievement of the orderliness and predictability

---

[16]   The referenced anti-waiver provisions of securities law are similar to ILSA's anti-waiver provision. See 15 U.S.C. §§ 77n, 78cc(a); see also 15 U.S.C. § 1712.

14

essential to any international business transaction[.]'" Id. at 1293 (quotation omitted); see also id. at 1294 ("[T]he [Supreme] Court consistently has treated 'truly international agreements,'differently than domestic transactions, which indisputably are subject to the anti-waiver provisions of the securities laws[.]") (internal citations omitted). The Eleventh Circuit emphasized that the Supreme Court's decisions in Bremen and Scherk rest on two underlying policy concerns: "(1) ensuring 'the orderliness and predictability [that are] essential to any international business transaction,' and (2) furthering international comity." Id. at 1294 (internal citations omitted) (alteration in Lipcon). To conclude that anti-waiver provisions of United States statutory laws "categorically preclude sophisticated parties from entering into international agreements—agreements that by definition involve parties and subject matter that would be subject to the laws of more than one nation if the parties did not contract ex ante for provisions governing choice of forum and choice of law—would undermine both" of these policies. Id. at 1294-95.

Had the contracts made no reference to ILSA, Lipcon appears to instruct that Defendants may well have been able to lawfully obtain a prospective waiver of all rights under ILSA through choice of forum and law clauses. See id. at 1287; see also Choi v. Samsung Heavy Indus. Co., Ltd., 129 F. App'x 394, 395-96 (9th Cir. 2005) (holding forum-selection clause designating Korean forum enforceable and, despite anti-waiver provision in ILSA, not contrary to strong public policy). This Court need not decide that question because such is not the case here as the contracts specifically invoke ILSA's disclosure

15

obligations and rights.[17]   The question for the Court, therefore, is whether the parties can contractually agree to apply ILSA's substantive requirements yet waive its broad venue provision.  The Court concludes that they may.

If parties may prospectively waive the substantive requirements of ILSA without offending a strong public policy, then surely they may choose to invoke the substantive law yet designate a foreign forum.  "[T]he enforceability of choice clauses in international agreements should be determined by a framework designed specifically for the international commercial context."  Lipcon, 148 F.3d at 1294.  Such a context "by definition involve[s] parties and subject matter that would be subject to the laws of more than one nation if the parties did not contract ex ante for provisions governing choice of forum and choice of law[.]"  Id. at 1295.  In other words, unlike domestic transactions, international transactions do not involve a default body of governing law—to the contrary, they are inherently fraught with conflicting laws.  As a necessary corollary, parties to an international agreement must be free to allocate the applicable law, including the appropriate forum, for litigation that may ensue.  In this case, the parties agreed to apply Bahamian law, but also to incorporate United States substantive protective rights under ILSA.  They also designated a Bahamian forum.  To

---

[17]   Had the contracts not referenced the statute, it is not clear whether ILSA would have been applicable to the instant transactions.  However, the parties specifically incorporated ILSA's disclosure obligations and rights, thus the Ginn Defendants must be held to "'honor [their] bargains'" by complying with those rights and obligations.  Lipcon, 148 F.3d at 1299 (quotation omitted) (alteration in Lipcon).

16

disregard this contractually agreed forum would run contrary to the paramount policy considerations of orderliness and international comity.[18]

Plaintiffs seek to distinguish this case from Lipcon on three grounds, none of which is persuasive to the Court. First, Plaintiffs argue that Lipcon "addressed only the anti-waiver provisions of U.S. securities laws[.]" See Response at 11. Plaintiffs explain no significance to this distinction, however, and the Court discerns none. As previously indicated, the anti-waiver provision in ILSA is substantially the same as the anti-waiver provisions in the securities laws. Compare 15 U.S.C. § 1712 with id. §§ 77n, 78cc(a). Moreover, as "an antifraud statute utilizing disclosure as its primary tool," ILSA itself operates "much like the securities laws." See Winter v. Hollingsworth Props., Inc.,777 F.2d 1444, 1447 (11th Cir. 1985).

Second, Plaintiffs argue that, unlike the plaintiffs in Lipcon, they do not seek a decision that ILSA's anti-waiver provision categorically bars application of a forum-selection clause, but rather, that under the facts of this case, policy considerations preclude enforcement of the forum-selection clauses. See Response at 11-12. In Lipcon, the Eleventh Circuit held both that the securities anti-waiver provisions could not categorically preclude enforcement of foreign choice of forum and law clauses and that policy

---

[18]    The Court reiterates that the contracts at issue involved sophisticated real estate transactions involving large sums of money. The parties explicitly agreed to apply Bahamian law in a Bahamian forum. Nevertheless, Defendants—presumably as a concession to entice United States buyers who might otherwise be reluctant to enter into such a transaction—specifically agreed to afford Plaintiffs substantive protection under the United States' anti-fraud statute, ILSA. To allow Plaintiffs to extend this concession by reference to ILSA's venue provision, and in the process eviscerate the explicit venue clause in the contracts, would allow Plaintiffs to prevail on the "gotcha" game they project on the Ginn Defendants.

considerations supported the enforceability of the clauses under the <u>Bremen</u> test. <u>See</u> <u>Lipcon</u>, 148 F.3d at 1295, 1298-99. Having considered <u>Lipcon</u> in its entirety, the Court disagrees with Plaintiffs' assertion that policy considerations counsel against enforcing the instant forum-selection clauses.

Finally, citing <u>Thomas</u>, Plaintiffs argue that this case is different than <u>Lipcon</u> because this case involves both a venue provision and an anti-waiver provision, whereas <u>Lipcon</u> involved only an anti-waiver provision. <u>See</u> Response at 9-11 & n.11. In <u>Thomas</u>, the district court articulated a similar distinction holding that a plaintiff's forum-selection clause was unenforceable as contrary to the strong public policy expressed in the venue provision of Title VII of the Civil Rights Act of 1964:

> Congress enacted a specific venue provision directly in Title VII, in part, to ensure that an aggrieved party would be afforded a range of choices in selecting her judicial forum, and thereby reduce some of the obstacles she may confront to fairly enforce her civil rights. Significantly, this is not a case in which the expression of public policy concerning choice of venue need be inferred from a provision unrelated to venue, such as that urged by the appellants in <u>Lipcon</u>, . . . who challenged a forum selection clause as unenforceable under the anti-waiver provisions of the United States securities laws. Rather, the public policy which permits an aggrieved party to bring her Title VII action in the forum in which the alleged discriminatory acts occurred is expressly stated in the statute.

<u>Thomas</u>, 45 Supp. 2d at 1381. The Court finds Plaintiffs' reliance on this distinction misplaced for two reasons.

The first, and most compelling, reason why Plaintiffs' reliance on <u>Thomas</u> is misplaced is that unlike <u>Lipcon</u> and the instant case, <u>Thomas</u> involved a purely domestic dispute. <u>See</u> <u>Thomas</u>, 45 F. Supp. 2d at 1376. Thus <u>Thomas</u>'s treatment of <u>Lipcon</u> is unpersuasive, because international agreements are <u>sui generis</u> and "the enforceability of choice clauses

18

in international agreements should be determined by a framework designed specifically for the international commercial context." See Lipcon, 148 F.3d at 1293-94.

Second, although the Court takes no issue with the result reached in Thomas, the particular distinction of Lipcon appears to be strained. In Lipcon, the question for the Court was not, as in this case or in Thomas, whether the plaintiffs' statutory claims should be confined to a particular forum, but rather, whether, through application of foreign choice clauses, the plaintiffs could prospectively waive altogether the protection of the statutory securities laws. Thus, the public policy in Lipcon was not, as Thomas portrayed it, limited to an attenuated expression concerning choice of venue. Given the specific and broad venue clauses at play in the Lipcon case, an attempted distinction from that case based on another statute's broad venue provision is unpersuasive.

In Lipcon, the securities laws at issue were the Securities Act of 1933 and Securities Exchange Act of 1934. "[W]here a plaintiff states claims under both the '33 and '34 Acts, the less restrictive jurisdiction and venue provisions contained in" the 1934 Act govern. Hilgeman v. Nat'l Ins. Co. of Am., 547 F.2d 298, 302 n.7 (5th Cir. 1977); see also Long v. Sports44.com, Inc., No. 8:06-CV-2384-T-27TGW, 2007 WL 3072405, at *6 (M.D. Fla. Oct. 19, 2007). The venue provision of the 1934 Act is strikingly broad and allows suits "to be brought anywhere that the Act is violated or a defendant does business or can otherwise be found." See Radzanower v. Touche Ross & Co., 426 U.S. 148, 149, 152 (1976); see also 15 U.S.C. § 78aa (giving plaintiffs a choice of venue in "the district wherein any act or transaction constituting the violation occurred" or "the district wherein the defendant is found or is an inhabitant or transacts business"). To be sure, the Court in Lipcon confined its

19

analysis to the anti-waiver provision, without explicit reference to the venue provision, but that does not diminish its precedential value. See Cohen v. Office Depot, Inc., 204 F.3d 1069, 1076 (11th Cir. 2000) ("[T]he prior panel precedent rule is not dependent upon . . . the skill of the attorneys or wisdom of the judges involved with the prior decision—upon what was argued or considered. Unless and until the holding of a prior decision is overruled by the Supreme Court or by the en banc court, that holding is the law of this Circuit regardless of what might have happened had other arguments been made to the panel that decided the issue first.").

In light of the foregoing, the Court concludes that Plaintiffs have failed to make a "clear showing" that enforcement of the Bahamian forum-selection clauses are unreasonable as repugnant to a strong public policy of the forum where suit was brought. See Lipcon, 148 F.3d at 1295-96. Having determined that Plaintiffs have failed to make a "clear showing" that the forum-selection clauses are unreasonable under the circumstances through application of any of the four Bremen factors, the Court finds that the forum-selection clauses are enforceable. See Lipcon, 148 F.3d at 1295-96. Nevertheless, in an abundance of caution, and in order to address certain arguments raised by Plaintiffs that do not directly lend themselves to any of the Bremen factors, the Court assesses whether the forum-selection clauses are designed to discourage legitimate claims, and thus, perhaps unenforceable as fundamentally unfair.[19] Plaintiffs argue that all Plaintiffs other than Ronald P. Van and Kathy

---

[19] All forum-selection clauses are evaluated for fundamental fairness and are unenforceable if fundamentally unfair. See Shute, 499 U.S. at 595; Lipcon, 148 F.3d at 1287, 1290. In the context of negotiated forum-selection clauses, this analysis is confined to application of the Bremen

(continued...)

Jo Van executed mortgage notes with Defendant Ginn Financial that include Florida choice-of-law and venue provisions,[20] and that the Ginn Entity that issued these notes, Bahamas Sales Associate LLC, has filed several federal lawsuits in Florida against defaulting borrowers not parties to the instant case. See Response at 6-7.[21] Additionally, Plaintiffs take issue with the fact that the contracts require litigation in the Bahamas despite having been carefully structured to avoid the necessity of Plaintiffs having to travel to the Bahamas to complete the closing of the transactions at issue. See Complaint at 20-21, 23. Although these factors may make Plaintiffs' suit prospects more difficult, and less appealing, the Court cannot conclude that requiring suit in the Bahamas for a contract concerning the purchase by Plaintiffs of property in the Bahamas evinces a bad-faith motive of discouraging Plaintiffs from pursuing legitimate claims. This is especially true given that the forum-selection clauses are set forth conspicuously in the contracts, and, as previously discussed, were not

---

[19](...continued)
test. See Lipcon, 148 F.3d at 1290, 1295-96. In the context of non-negotiated forum-selection clauses, the fundamental fairness inquiry may be broader, however. See Shute, 499 U.S. at 595. For example, "forum-selection clauses contained in form passage contracts" may be unenforceable if they are the product of a "bad-faith motive" such as "a means of discouraging cruise passengers from pursuing legitimate claims." See id.

[20]     Forum-selection clauses are interpreted under ordinary contract principles and may be categorized as permissive, mandatory, or hybrid. See Ocwen Orlando Holdings Corp. v. Harvard Prop. Trust, LLC, 526 F.3d 1379, 1381 (11th Cir. 2008). "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, in contrast, dictates an exclusive forum for litigation under the contract." Id. (quotation and internal quotation marks omitted). A hybrid clause "provides for permissive jurisdiction in one forum that becomes mandatory upon the party sued." Id. Unlike the mandatory venue provision in the instant contracts, the Florida venue provisions in the notes provide only for permissive venue in Florida. See Adjustable Rate Balloon Note, attached as Exhibit A to Declaration of Plaintiff Dana L. Ballinger in Support of Plaintiffs' Opposition to Ginn Defendants' Motion to Dismiss (Doc. No. 93; Ballinger Declaration), at 4.

[21]     Plaintiffs also note that their title insurance policies contain Florida choice-of-law and venue clauses. Stewart Title Guaranty Company, the issuer of the title insurance policies, has been dismissed from this suit.

21

the product of fraud or overreaching. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991). In sum, Plaintiffs have not discharged their heavy burden of showing that enforcement of the forum-selection clauses would be unreasonable under the circumstances or otherwise fundamentally unfair, either through application of the Bremen factors or otherwise. Accordingly, the Court finds that the Bahamian forum-selection clauses in Plaintiffs' contracts are valid and enforceable. See Lipcon, 148 F.3d at 1295-96.

### 2.      The forum-selection clauses are applicable

Having determined that the forum-selection clauses in Plaintiffs's contracts are valid and enforceable, the Court must next consider an issue not addressed by the parties—the scope of the clauses' applicability. Specifically, the Court must determine which of Plaintiffs' claims fall within the reach of the forum-selection clauses, and which Ginn Defendants are entitled to invoke the clauses. Although neither issue merits extensive discussion, the Court will not rule sub silentio.[22]

As to the first issue, although Plaintiffs vigorously contest the enforceability of the forum-selection clauses, they do not dispute that their claims fall within the broad scope of the forum-selection clauses. Each such clause provides for Bahamian courts to be the exclusive "venue for any dispute, proceeding, suit or legal action concerning the interpretation, construction, validity, enforcement, performance of, or related in any way to,

---

[22]      The parties' briefing presumes that the venue issue presents an all-or-nothing question—that is, either that all claims against all Ginn Defendants should be dismissed for improper venue, or that no claims against any Ginn Defendant should be dismissed for improper venue. While the Court ultimately finds that all claims against all Ginn Defendants are due to be dismissed for improper venue, the Court finds a brief analysis appropriate.

22

this Contract or any other agreement or instrument executed in connection with this Contract." See Contracts, attached as Exhibits C-K to Complaint, at ¶ 22. Each count of the Complaint incorporates by reference the allegations as to the respective Plaintiffs' execution of their contracts. Likewise, the Property Reports forming the central basis for most of Plaintiffs' claims reference, and are explicitly referenced in, the contracts themselves. Thus, the structure of the Complaint and the factual allegations therein reflects that Plaintiffs' claims fall within the broad scope of the forum-selection clauses.

As to the second issue, there is no question but that Ginn-La, as a party to the contracts, is entitled to invoke the forum-selection clause therein. Not so clear cut is the ability of the remaining Ginn Defendants, who are not signatories to the contracts, to invoke the forum-selection clauses. As "a contractual right[,]" a forum-selection clause "cannot ordinarily be invoked by or against a party who did not sign the contract in which the provision appears." See Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151, 1169 (11th Cir. 2009) (citation omitted). Nevertheless, a non-signatory to a contract may invoke such a right against a signatory in certain circumstances. For example, in the similar scenario of an arbitration clause within a contract, the Eleventh Circuit Court of Appeals has recognized that a non-signatory to a contract may invoke an arbitration clause therein under a theory of equitable estoppel, under agency or related principles, or where the non-signatory is an

23

intended third-party beneficiary of the contract.  See MS Dealer Serv. Corp. v. Franklin, 177

F.3d 942, 947 (11th Cir. 1999).[23]

> An equitable estoppel theory
>
> allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory.  When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[ ] out of and relate[ ] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."

Id. (internal citations omitted) (alterations in MS Dealer).  The Court finds each circumstance

applicable here, and determines that all the Ginn Defendants are entitled to invoke the

Bahamian forum-selection clause in Plaintiffs' contracts.

## IV.    Conclusion

In light of the foregoing, the Court determines that the instant Motion is due to be

granted, and Plaintiffs' claims against the Ginn Defendants are due to be dismissed for

---

[23]    As the Court previously indicated, arbitration agreements are similar to forum-selection clauses.  See Scherk, 417 U.S. at 519; see also Anders v. Hometown Mortg. Services, Inc., 346 F.3d 1024, 1029 (11th Cir. 2003) (citation omitted).  The Court recognizes, however, that the legal standards for enforceability differ, see Sam Reisfeld & Son, 530 F.2d at 680-81, and that there is a liberal federal policy in favor of arbitration, see Becker v. Davis, 491 F.3d 1292, 1298 (11th Cir. 2007).

Nevertheless, in Cooper, the Eleventh Circuit explicitly applied the law from arbitration cases in determining whether a signatory could bind a non-signatory to a choice-of-law provision in a contract. See Cooper, 575 F.3d at 1169-70.   The discussion in Cooper, which also considered Lipcon's endorsement of an alternative theory of binding a non-party to a forum-selection, strongly suggests that any of the established theories for allowing a non-signatory to invoke a contract's arbitration clause should also be sufficient to allow a non-signatory to invoke a forum-selection clause.

improper venue pursuant to Rule 12(b)(3).  In so concluding, the Court expresses no view as to the merits of Plaintiffs' claims, but simply holds that Plaintiffs "must 'honor [their] bargains,' and attempt to vindicate their claims in" Bahamian court.  <u>See</u> <u>Lipcon</u>, 148 F.3d at 1299 (quotation omitted) (alteration in <u>Lipcon</u>).

Accordingly, it is **ORDERED**:

1.      Defendants Ginn-La West End, Limited, Ginn Financial Services, Robert F. Masters II, and Edward R. Ginn, III's Motion to Dismiss Plaintiffs' Second Amended Complaint and Incorporated Memorandum of Law in Support (Doc. No. 77) is **GRANTED**.

2.      Plaintiffs' claims against the Ginn Defendants are dismissed without prejudice for improper venue pursuant to Rule 12(b)(3), Federal Rules of Civil Procedure.