**James CROSBY, Plaintiff,**

v.

**NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY, Defendant.**

**Civ. A. No. 83–0354–K.**

United States District Court, D. Massachusetts.

Dec. 31, 1985.

Carroll E. Ayers, Ayers & Conley, Wakefield, Mass., for plaintiff.

F. Barry Maher, William J. McDonald, New England Tel. & Tel. Co., Boston, Mass., for defendant.

### MEMORANDUM

KEETON, District Judge.

Plaintiff, a career employee of defendant, applied for and was granted, effective February 12, 1982, a Company Service Pension at age 62. In 1983, he filed this action under the Age Discrimination in Employ-

ment Act (ADEA), 29 U.S.C. §§ 621, *et seq.*, alleging that but for defendant's engaging in practices prohibited by 29 U.S.C. § 623(a)(1) and (a)(2) he would have remained an active employee until his 65th birthday, October 14, 1984. With the objective of aiding the parties in determining whether the case can be settled, the court invited memoranda of law on the applicable measure of recovery in the event plaintiff prevails. After further conferences in July and August, the submissions are now before the court for determination of one of the principal issues in dispute.

## I.

Plaintiff seeks an award of back pay pursuant to the following provisions of the Act:

> Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided,* That liquidated damages shall

be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

29 U.S.C. § 626(b). The references to "unpaid minimum wages" and "unpaid overtime compensation" have been construed to allow aggrieved employees to recover "lost wages." *Lorillard v. Pons,* 434 U.S. 575, 579, 98 S.Ct. 866, 869, 55 L.Ed.2d 40 (1978).

As I understand the contentions of the parties, further clarified in written submissions and conferences, the contrasting ways that plaintiff and defendant propose to calculate the award, should plaintiff succeed on his basic claim under ADEA, are shown in the following table:

| Foregone Compensation to Age 65 | Plaintiff's Calculation | Defendant's Calculation |
|---|---|---|
| 1. Foregone Wages (age 62 to age 65) | $78,900.00 | $78,900.00 |
| 2. Less Pension Payments Plaintiff Received (age 62 to age 65) | 26,792.50 | 26,792.50 |
| 3. | $52,107.50 | $52,107.50 |
| 4. Less Social Security Benefit Payments Plaintiff Received (age 62 to age 65) | 0 | 34,284.50 |
| 5. | $52,107.50 | $17,823.00 |
| 6. Less Any Deduction Incident to Plaintiff's Obligation to Mitigate His Damages | 0 | to be determined |
| 7. Proposed Award for Foregone Compensation to Age 65 | $52,107.50 | to be determined |
| **Foregone Future Compensation:** | | |
| 8. Plaintiff's Current Monthly Pension | $ 886.19 | $ 886.19 |
| 9. Plaintiff's Monthly Pension Had He Not Retired Until Age 65 | 995.67 | 995.67 |
| 10. Monthly Difference | $ 109.48 | $ 109.48 |
| 11. Present Value of Monthly Difference for Life Expectancy | $ 8,000.00 | $ 8,000.00 |

| Foregone Future Compensation: | Plaintiff's Calculation | Defendant's Calculation |
|---|---|---|
| 12. Present Value of Difference in Wife's Monthly Survivor Annuity | $ 900.00 | $ 900.00 |
| Total | $ 8,900.00 | $ 8,900.00 |
| 13. Proposed Award for Foregone Future Compensation | 8,900.00 | 8,900.00 |
| TOTAL AWARD | $61,007.50 | to be determined (not more than $26,723.00) |

## II.

The central issue addressed by the memoranda of the parties concerns line 4 of the calculations recited above, relating to the social security benefits received by the plaintiff up to age 65.

Defendant calls attention to the fact that they were exceptionally high in this instance because, during part or all (the submissions are not clear as to which) of this period plaintiff had a minor child and therefore received some amount (not made clear) in addition to his normal retirement benefit, which he would never have received had he retired at age 65.

Both the normal benefit and the addition by reason of minority of a child are benefits that plaintiff would not have received but for his early retirement. If these benefits are not deducted in calculating the ADEA award, he receives more than compensation for his loss from "unpaid wages" and—absent assumptions of economic loss in some other way not disclosed by evidence—more than enough to restore him to the economic position he would have occupied if defendant's alleged violations of ADEA had not occurred. Should part or all of the $34,284.50 in social security benefits received between ages 62 and 65 be deducted in calculating an ADEA award to plaintiff if it is determined that plaintiff is entitled to such an award?

The First Circuit has not answered this question, nor has it ruled upon any closely analogous question. Decisions of other circuits that are arguably in point or closely analogous include several conflicting strands of authority.

The Third Circuit has held that as a rule of law and not as a matter of discretion, neither social security benefits nor unemployment benefits should be deducted. E.g., *Maxfield v. Sinclair International,* 766 F.2d 788, 793–95 (3d Cir.1985) (social security benefits are collateral and should not be deducted from an ADEA back pay award); *McDowell v. Avtex Fibers, Inc.,* 740 F.2d 214, 215–17 (3d Cir.1984), *vacated and remanded on other grounds,* —— U.S. ——, 105 S.Ct. 1159, 84 L.Ed.2d 312 (1985) (unemployment benefits may not be deducted from an ADEA back pay award).

One may also read decisions of the Fourth and Sixth Circuits as supporting a firm rule of law against deduction of benefits such as social security and unemployment compensation. *See Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614, 627 (6th Cir.1983) ("unemployment compensation also should not be deducted from [Title VII] backpay awards"), and *EEOC v. Ford Motor Co.,* 645 F.2d 183, 195–96 (4th Cir.1981) (back pay awards under Title VII should not be affected by unemployment compensation, citing *Abron v. Black & Decker Manufacturing Co.,* 439 F.Supp. 1095, 1115 (D.Md.1977), *aff'd in part and vacated in part,* 654 F.2d 951 (4th Cir. 1981)). In one case presented for decision shortly after the Third Circuit adopted a like rule for Title VII cases, I applied that rule in a Title VII sex discrimination context, relying on the weight of authority at that time. *Ryan v. Raytheon,* 601 F.Supp. 243, 254 (D.Mass.1985), *citing Craig v. Y & Y Snacks, Inc.,* 721 F.2d 77, 81–85 (3d Cir.1983) and the cases there cited.

The reasoning of the Third Circuit is that the employee, who may have suffered noncompensable losses, should get the benefit

of "collateral" funds, not the employer who wrongfully discharged the employee.

This reasoning is vulnerable to the criticism that neither social security nor unemployment benefits are entirely "collateral," since the employer was required by law to make contributions to support the social security and unemployment benefit systems. Harper and James, in discussing the appropriate use of the collateral benefit rule to cases involving social security legislation, noted that

> [T]he double recovery result in the accident insurance cases is hard indeed to justify on principle though perhaps it has done little harm in practice for, as practical claim men know, the beneficiary of an accident policy is usually willing to settle his tort claim for less than he otherwise would.

The implications of the foregoing discussion for the problem of social insurance seem fairly clear. To the extent that welfare legislation is concerned with compensation or indemnity, accident insurance furnishes a weak analogy, and there seems to be no basis for double recovery to the claimant whether the legislation is one providing for a contribution on his part or not. Presumably such schemes are not intended to provide windfalls. Certainly there is little if any trace of such intent in the philosophy of the American legislation, and it is submitted that the courts should be exceedingly reluctant to find it.

2 F. Harper & F. James, *The Law of Torts*, § 25.22 at 1354 (1956) (citations omitted). *But cf. EEOC v. Sandia Corp.*, 639 F.2d 600, 625 (10th Cir.1980), and *Restatement (Second) of Torts*, § 920A, comment c(4) (1979). Thus, the Third Circuit rule, rather than being clearly analogous to the collateral source rule of tort law, is arguably an extension beyond that rule. And such an extension is the more striking in view of other recent developments in the law manifesting a public policy, at least in some contexts, in favor of coordination of benefits and avoidance of duplicative or "windfall" benefits through public and private insurance and compensation systems. *See, e.g., Cody v. Connecticut General Life Insurance Co.*, 387 Mass. 142, 439 N.E.2d 234, 238–39 (1982) ("coordination-of-benefits clauses [in insurance contracts] serve the public purpose of avoiding duplicate recoveries for the same injuries.") (citations omitted).

Both the Third Circuit and other courts have carved an exception to the Third Circuit rule for cases in which a governmental body rather than a private entity is the party seeking the offset. *E.g., Dillon v. Coles*, 746 F.2d 998, 1007 (3d Cir.1984). *Cf. EEOC v. Wyoming Retirement System*, 771 F.2d 1425, 1432 (10th Cir.1985), which, however, also treats the issue of offset as one for the exercise of discretion. The recognition of this exception somewhat undercuts the force of any argument for further extensions, by analogy, of a rule of law, and not merely an exercise of discretion, against offsetting benefits.

Another current of authority, outside the Third Circuit, treats issues of offset as matters for discretionary determination. *E.g., EEOC v. Wyoming Retirement System*, 771 F.2d at 1432; *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 161–62 (7th Cir.1981); *Naton v. Bank of California*, 649 F.2d 691, 700 (9th Cir.1981); *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 736 (5th Cir.1977). *See also EEOC v. Sandia Corp.*, 639 F.2d 600 (10th Cir.1980).

An invariably applicable rule of law such as the Third Circuit has adopted serves the interests of predictability and certainty, but at the same time necessarily sacrifices the ability of the courts to tailor relief more sensitively to the circumstances of each particular case. It elects predictable, rough justice over less predictable but more sensitively refined outcomes.

In addition to this array of conflicting strands of authority, I take account of the First Circuit's declarations that back pay awards are aimed at restoring the plaintiff to the economic position the plaintiff would have occupied had no wrong occurred. *Kolb v. Goldring, Inc.*, 694 F.2d 869, 872

(1st Cir.1982) ("Damages are meant to put the plaintiff in the economic position he would have occupied but for the discrimination. *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir.1979); ...").  I conclude that the First Circuit is more likely to adopt a view providing for an exercise of discretion than a rule such as the Third Circuit has adopted.  This probability is strengthened by the availability of the ADEA provision for liquidated damages where willful discrimination is proved.

I will defer formal ruling on this issue until entering judgment in this case, at which time I can take into account any intervening developments in the law as well as any additional facts that may be offered in evidence.  The parties are advised, however, that in the absence of evidence beyond that now before the court in the present submissions, I expect to rule, in the exercise of discretion, that the $34,284.50 plaintiff received in social security benefits from age 62 to 65 should be deducted in determining any award of back pay for that period.