[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  11-11664
_____

D.C. Docket No. 3:08-cv-01012-TJC-JRK

BAHAMAS SALES ASSOCIATE, LLC,

Plaintiff-Counter Defendant-
Appellee,

versus

DONALD CAMERON BYERS,

Defendant-Counter Claimant-
Appellant,

versus

GINN FINANCIAL SERVICES, LLC,
BAHAMAS SALES ASSOCIATE LLC,
GINN TITLE SERVICES, LLC, and
EDWARD R. GINN, III,

Counter Defendants-Appellees.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 4, 2012)

Before HULL, MARCUS, and COX, Circuit Judges.

COX, Circuit Judge:

In late 2006, Donald Cameron Byers purchased a lot in the Bahamas. His purchase contract contains a provision that requires all disputes to be litigated in the Bahamas under Bahamian law. Byers financed the purchase with a mortgage loan made by Bahamas Sales Associate, LLC (Bahamas Sales), a mortgage lender. After Byers failed to make payments on the mortgage note, Bahamas Sales sued Byers in the Middle District of Florida. Byers counterclaimed against Bahamas Sales and others associated with Bahamas Sales, alleging that they engaged in appraisal fraud. The defendants to the counterclaim moved the court to dismiss Byers's counterclaim for improper venue, arguing that, under the purchase contract, venue is proper only in the Bahamas. The district court held that the counterclaim fell within the scope of the forum-selection clause in the purchase contract. The court then applied the doctrine of equitable estoppel to allow the Counterclaim Defendants (all of which are nonsignatories to the purchase contract) to invoke that forum-selection clause requiring that the case be litigated in the Bahamas. The court then dismissed the case for improper venue. Byers appeals the dismissal. We reverse and remand.

2

I. Facts and Procedural History[1]

Donald Byers purchased a lot in the Ginn Sur Mer subdivision on Grand Bahama Island in the Bahamas from Ginn-LA West End Limited (Ginn-LA). (R.3-89 Ex. 1.)  The parties signed a lot purchase contract that contains a forum-selection clause and a choice-of-law clause that requires all disputes to be litigated in Bahamian courts under Bahamian law. (*Id.* ¶ 22, at 14.)  Specifically, the forum-selection clause provides:

> [T]he courts of the Commonwealth ("Commonwealth Courts") will be the venue for any dispute, proceeding, suit or legal action concerning the interpretation, construction, validity, enforcement, performance of, or related in any way to, this Contract or any other agreement or instrument executed in connection with this Contract.  In the event any such suit or legal action is commenced by any party, the other parties agree, consent, and submit to the personal jurisdiction of the Commonwealth Courts with respect to such suit or legal action.  In such event, each party waives any and all rights under applicable law or in equity to object to jurisdiction or venue of the Commonwealth Court.  Such jurisdiction and venue shall be exclusive of any other jurisdiction and venue.

(*Id.*)   The choice-of-law clause reads as follows: "The local laws of the Commonwealth, without regard to the Commonwealth's choice of law rules, will

---

[1] Byers's third amended counterclaim is the relevant pleading; because this appeal is before us at the motion to dismiss stage, our recitation of the facts comes from Byers's third amended counterclaim.  Additionally, because we treat a dismissal based on a forum-selection clause as a question of proper venue under Federal Rule of Civil Procedure 12(b)(3), *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998), we also look to evidence outside the pleading, like the lot purchase contract and the mortgage note,  *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 & n.22 (11th Cir. 2012).

exclusively govern the interpretation, application, enforcement, performance of, and any other matter related to, this Contract." (*Id.*) Only Byers and Ginn-LA signed the lot purchase contract. (*Id.* at 19.) Byers's obligation under the lot purchase contract was not contingent on his ability to obtain financing. (*Id.* ¶ 4, at 4.)

After entering into the contract, Byers applied for and received mortgage financing from Bahamas Sales. (R.1-1 Ex. A.) The mortgage note also contains a forum-selection clause and a choice-of-law clause. The clauses require that all disputes be litigated in Florida under Florida law. (*Id.* ¶ 11, at 4.) The relevant provision states:

> This Note and the rights and obligations of Borrower and Lender shall be governed by and interpreted in accordance with the law of the State of Florida. In any litigation in connection with or to enforce this Note or any endorsement or guaranty of this Note or any loan documents, obligors, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Florida or the United States located within the State of Florida and expressly waive any objections as to venue in any such courts.

(*Id.*) Only Byers and Bahamas Sales are parties to the mortgage note. (*Id.* at 5.)

Apparently the real estate market tanked sometime after Byers closed the purchase and mortgage loan. And in October 2008, Bahamas Sales sued Byers in the Middle District of Florida for his failure to make payments on the mortgage note. (R.1-1.) In response, Byers filed a counterclaim alleging that Bahamas

4

Sales, Ginn Financial Services (the parent company of Bahamas Sales), Bobby Ginn (an officer of Bahama Sales), and Ginn Title Services (together, the Mortgage Entities)[2] participated in a scheme to produce fraudulent lot appraisals in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (2006).[3] (R.3-83.) The counterclaim seeks rescission of the note and mortgage and restitution of payments previously made on the note. (*Id.*)

Byers's counterclaim alleges that the Mortgage Entities fraudulently inflated the appraisal of his Ginn Sur Mer lot and used that inflated appraisal to set the amount on the mortgage note. (*Id.* at 17–19.) Because of the inflated appraisal, Byers alleges, he closed on the mortgage note and mortgage for an amount that far exceeded the market value of the lot. (*Id.*) The appraisal fraud claims are based on the assumption that if a proper appraisal had been done and the lot appraised for an amount lower than its sales price, Byers would not have closed the purchase of the lot. (*Id.* ¶ 103, at 18.) Further, if a proper appraisal had been done and the lot appraised for a value less than its purchase price, Byers could have simply walked

---

[2] Byers also brought RICO claims against William McCracken, an officer of Ginn Financial Services. However, McCracken was dismissed with prejudice pursuant to a stipulation of voluntary dismissal. (R.4-102.)

[3] Specifically, Byers alleges that the Mortgage Entities violated § 1962(c) and § 1962(d). (R.3-83 ¶¶ 132–40, at 40–41.)

away from the lot purchase contract and paid only liquidated damages for his failure to close the purchase.  (*Id.*)

The district court dismissed Bahamas Sales's breach-of-contract claim against Byers for lack of subject-matter jurisdiction.[4]  (R.5-132 at 3–4.)  But the district court retained jurisdiction over Byers's counterclaim.  (*Id.* at 4.)

Rather than answering Byers's counterclaim, the Mortgage Entities filed a motion to dismiss, asserting that venue would be proper only in the Bahamas under the forum-selection clause in the lot purchase contract.  (R.3-89.)  The district court agreed.  The court held that Byers's counterclaim falls within the scope of the lot purchase contract's forum-selection clause.  (R.5-132.)  It also held that the Mortgage Entities, though not signatories to the lot purchase contract, could nevertheless enforce the forum-selection clause under the doctrine of equitable estoppel.  (*Id.*)  We reverse and remand.

---

[4] Bahamas Sales had invoked the court's diversity jurisdiction, and the court found that there was not complete diversity of citizenship. (R.5-132 at 3–4.)

## II. Issues on Appeal

This appeal presents three issues:  first, whether Bahamas Sales is bound by the forum-selection clause in the mortgage note that selects Florida courts as the forum; second, whether the district court erred in concluding that Byers's claims fall within the scope of the lot purchase contract's forum-selection clause; and third, whether the district court improperly applied the doctrine of equitable estoppel to allow these nonsignatories to enforce the lot purchase contract's forum-selection clause.

## III. Standard of Review

The enforceability of a forum-selection clause is a question of law that we review de novo.  *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1329–30 (11th Cir. 2011).  Further, whether the doctrine of equitable estoppel applies is a question of law that we review de novo. *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 946 (11th Cir. 1999).

## IV. Discussion

Byers challenges the district court's dismissal for improper venue on three grounds.  Byers asserts that (A) Bahamas Sales agreed to venue in Florida under the mortgage note; (B) the lot purchase contract's forum-selection clause does not

7

cover the counterclaim;[5] and (C) the Mortgage Entities, as nonsignatories to the lot purchase contract, cannot invoke the lot purchase contract's forum-selection clause. We address each issue in turn.

A.

Byers first argues that the mortgage note's forum-selection clause binds Bahamas Sales as a party to the mortgage note and that under this forum-selection clause, Bahamas Sales waived any objection to venue in Florida.

To determine whether Bahamas Sales is bound by the note's clause, we look first to the language of the clause. *Slater*, 634 F.3d at 1330 (applying general contract principles and looking to the plain meaning of the forum-selection clause). The forum-selection clause reads as follows: "[i]n any litigation in connection with or to enforce this Note . . . obligors, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Florida or the United States located within the State of Florida . . . ." (R.1-1 Ex. A ¶ 11, at 4.) The essential term to the resolution of this issue is "obligors." An obligor is "one who

_____

[5] In his brief, Byers simply argues that his counterclaim does not relate to the lot purchase contract and therefore that the district court erred by applying the "related to" analysis to Byers's counterclaim. The district court only applied this "related to" analysis when it concluded that Byers's counterclaim is subject to the lot purchase contract's forum-selection clause. Thus, we understand Byers's argument to be that the lot purchase contract's forum-selection clause does not cover his counterclaim because his counterclaim does not relate to the lot purchase contract.

has undertaken an obligation." *Black's Law Dictionary* 1181 (9th ed. 2009). Byers is the obligor under the mortgage note because the note obligates him to repay the debt. Bahamas Sales is not an obligor; it is the party to which an obligation is owed. The forum-selection clause binds only Byers.

We therefore reject Byers's argument that Bahamas Sales waived any objection to venue in Florida. Bahamas Sales is not an obligor under the note and is not bound by the provision waiving objections to venue in the forum-selection clause.

## B.

Byers's next argument is that his counterclaim does not fall within the scope of the lot purchase contract's forum-selection clause. Specifically, Byers contends that his counterclaim is not related to the lot purchase contract.

To determine if a claim falls within the scope of a clause, we look to the language of the clause. *Slater*, 634 F.3d at 1330–31. Here, the forum-selection clause states, "the courts of the Commonwealth [of the Bahamas] . . . will be the venue for any dispute, proceeding, suit or legal action . . . related in any way to [the lot purchase contract]." (R.3-89 Ex. 1 ¶ 22, at 14.) Thus, we must decide if the appraisal fraud claims "relate in any way" to the lot purchase contract.

9

A claim "relates to" a contract when "the dispute occurs as a fairly direct result of the performance of contractual duties." *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001). Moreover, the fact that a dispute could not have arisen but for an agreement does not mean that the dispute necessarily "relates to" that agreement. *Int'l Underwriters AG v. Triple I: Int'l Invs., Inc.*, 533 F.3d 1342, 1347 (11th Cir. 2008). The phrase "'related to' marks a boundary by indicating some direct relationship." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011). Requiring a direct relationship between the claim and the contract is necessary because, "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, it would have no limiting purpose because really, universally, relations stop nowhere." *Id.* at 1218–19 (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S. Ct. 1671, 1677 (1995)) (alteration in original) (internal quotation marks omitted).

The district court concluded that the lot purchase contract's forum-selection clause covered Byers's appraisal fraud claims because the provision is "very broad," the purchase contract is the source of the parties' relationship, and without the lot purchase contract, Byers would not have signed the mortgage note and been a victim of alleged appraisal fraud. (R.5-132 at 8–10.)

10

While we agree that the clause's language is broad, it is not all-encompassing. It is not so broad that it covers appraisal fraud claims that do not have a direct relationship to the lot purchase contract. Further, the lot purchase contract is not the source of the parties' relationship because the Mortgage Entities are not parties to the lot purchase contract. Finally, a but-for relationship between the claims and the lot purchase contract does not mean the claims "relate to" the contract. *Triple I*, 533 F.3d at 1347. The dispute between Byers and the Mortgage Entities is not "a fairly direct result of the performance of contractual duties" under the lot purchase contract. *See Telecom Italia*, 248 F.3d at 1116. The appraisal fraud claims do not allege that the Mortgage Entities interfered with Ginn-LA's performance obligations under the lot purchase contract. Thus, the claims do not fall within the scope of the forum-selection clause.

## C.

Having concluded that the counterclaim does not fall within the scope of the forum-selection clause, we also address Byers's final argument. Byers argues that the district court incorrectly applied equitable estoppel to allow the Mortgage Entities to invoke the lot purchase contract's forum-selection clause. Byers asserts that his counterclaim does not rely on the lot purchase contract and that, for this reason, the doctrine of equitable estoppel cannot properly be applied.

11

We note at the outset that the parties litigated this case on the assumption that federal common law applies to the question of whether equitable estoppel should apply to allow a nonsignatory to invoke a forum-selection clause.[6]  All of the parties briefed and argued their cases under federal common law as to the equitable estoppel issue on this appeal.  If the parties litigate the case under the assumption that a certain law applies, we will assume that that law applies.  *Chase Manhattan Bank v. Rood*, 698 F.2d 435, 436 n.1 (11th Cir. 1983) (assuming Florida law is the applicable substantive law in the case because both parties briefed and argued Florida law on appeal).  Therefore, we assume that federal common law is the applicable law in this case.

Generally, "one who is not a party to an agreement cannot enforce its terms against one who is a party."  *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1167

---

[6] The parties do not suggest that there is any significant difference between federal common law and Florida law concerning equitable estoppel.  *See Kolsky v. Jackson Square, LLC*, 28 So. 3d 965, 969 (Fla. 3d Dist. Ct. App. 2010) (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), for the notion that alleged concerted misconduct between a nonsignatory and signatory warrants application of equitable estoppel); *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 212 (Fla. 3d Dist. Ct. App. 2003) (citing *MS Dealer* and *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971 (11th Cir. 2002), for the proposition that equitable estoppel is warranted when the signatory's claims rely on the contract).

12

(11th Cir. 2011). There are, however, exceptions to this general rule. And the doctrine of equitable estoppel is one of them.[7]

Equitable estoppel allows a nonsignatory to enforce the provisions of a contract against a signatory in two circumstances: (1) when the signatory to the contract relies on the terms of the contract to assert his or her claims against the nonsignatory; and (2) when the signatory raises allegations of interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. *MS Dealer*, 177 F.3d at 947. In essence, equitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose. *Blinco v. Green Tree Servicing LLC,* 400 F.3d 1308, 1312 (11th Cir. 2005). A forum-selection clause would be one such burden. The doctrine of equitable estoppel is grounded in fairness. As we noted in *In re Humana Inc. Managed Care Litigation*:

> In all cases, the lynchpin for equitable estoppel is equity, and the point of applying it to compel [application of a contractual provision] is to prevent a situation that would fly in the face of fairness. The purpose

---

[7] Although all of the cases we cite concern the application of equitable estoppel to contracts with arbitration clauses rather than forum-selection clauses, the equitable estoppel analysis is the same. Arbitration clauses are similar to forum-selection clauses. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519, 94 S. Ct. 2449, 2457 (1974) ("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause . . . .").

of the doctrine is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage . . . .    The plaintiff's actual depend[e]nce on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel.

285 F.3d 971, 976 (11th Cir. 2002) (citations omitted) (internal quotation marks omitted), *rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 123 S. Ct. 1531 (2003).

Byers does not allege concerted misconduct between the Mortgage Entities and Ginn-LA (the developer and signatory to the lot purchase contract).[8]    Thus, the Mortgage Entities must look only to the first circumstance in which the doctrine of equitable estoppel applies.  We therefore limit our inquiry to whether Byers relies on the terms of the lot purchase contract in asserting his appraisal fraud claims against the Mortgage Entities.

A party relies on the terms of a contract when the party's claims are "intimately founded in and intertwined with the underlying contract obligations."

---

[8] The Mortgage Entities argue that Byers does allege concerted misconduct between the Mortgage Entities and Ginn-LA.  As we have noted, however, application of equitable estoppel is warranted when a signatory to a contract "raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer*, 177 F.3d at 947 (alteration in original) (internal quotation marks omitted). Byers does not allege concerted misconduct between the Mortgage Entities and Ginn-LA in his counterclaim. (R.3-83.)

14

*McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., Inc.*, 741 F.2d 342, 344 (11th Cir. 1984) (quoting *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 841 n.9 (7th Cir. 1981)) (internal quotation marks omitted). That is, the party must actually depend on the underlying contract to make out his or her claim against the nonsignatory. *In re Humana*, 285 F.3d at 976. The signatory must attempt to hold the nonsignatory to the terms of the contract. *Becker v. Davis*, 491 F.3d 1292, 1300 (11th Cir. 2007).

A but-for relationship between the claims and the contract "alone is not enough to warrant equitable estoppel." *Lawson*, 648 F.3d at 1174. As we noted above, for a party's claims to rely on a contract, the party must actually depend on the underlying contract to assert the claims. *In re Humana*, 285 F.3d at 976. A simple but-for relationship does not constitute the actual dependence on the underlying contract that equitable estoppel requires. There is scant authority dealing with this precise issue. Our view, however, comports with the view of two of our sister circuits. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 709 (10th Cir. 2011) (per curiam) ("For a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them."); *Brantley v.*

15

*Republic Mortg. Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005) ("The district court correctly found that the mere existence of a loan transaction requiring plaintiffs to obtain mortgage insurance cannot be the basis for finding their federal statutory claims . . . to be intertwined with that contract."). And the parties cite no precedent to the contrary.

Because the application of equitable estoppel is not a "rigid test, and each case turns on its facts," *In re Humana*, 285 F.3d at 976, we now turn to the facts of this case.

Byers's counterclaim alleges that the Mortgage Entities fraudulently appraised his lot for an inflated amount and that as a result, the amount of his mortgage note far exceeded the market value of his lot. Byers argues that the appraisal fraud claims do not rely on the lot purchase contract because he does not need the contract to establish the liability of the Mortgage Entities, he does not attempt to hold the Mortgage Entities to the terms of the lot purchase contract, and he does not allege that the Mortgage Entities breached the lot purchase contract.

The Mortgage Entities, on the other hand, contend that this case is just like *Liles v. Ginn-LA W. End, Ltd.*, 631 F.3d 1242 (11th Cir. 2011)—a case in which we held that equitable estoppel was properly applied.

16

*Liles*, however, is clearly distinguishable. In *Liles*, the plaintiffs, buyers of Ginn Sur Mer lots, sued Ginn-LA (the developer and signatory to the lot purchase contract), Robert Masters (Ginn-LA's President), Edward R. "Bobby" Ginn (Ginn-LA's chairman), and Ginn Financial Services. *Id.* at 1243.[9] The plaintiffs alleged that all of the defendants except Ginn Financial Services violated the Interstate Land Sales Full Disclosure Act (the Land Sales Act)[10] by failing to disclose or affirmatively concealing material facts concerning the titles to the properties. *Id.* at 1243–44. They further alleged common law fraud, claiming that all of the defendants failed to disclose information relating to the titles to the lots. *Id.* For relief, the plaintiffs sought rescission of their lot purchase contracts. *Id.* at 1243. The defendants sought to invoke the lot purchase contract's Bahamian forum-selection clause. *Id.* at 1244. We held both that Ginn-LA could invoke the forum-selection clause in the contract because it was a signatory and that the other

---

[9] Some of the same parties are involved in this appeal. In particular, two of the Mortgage Entities in this action are Ginn Financial Services and Ginn (as an officer of Bahamas Sales).

[10] The Land Sales Act is a consumer protection statute "intended to curb abuses accompanying interstate land sales." *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 853 (11th Cir. 2009) (quoting *Winter v. Hollingsworth Props., Inc.*, 777 F.2d 1444, 1448 (11th Cir. 1985)). The Land Sales Act requires developers to provide the purchaser with a property report before the sales contract is signed. 15 U.S.C. § 1703(a)(1)(B). The Land Sales Act also contains a general antifraud provision. *Id.* § 1703(a)(2).

17

nonsignatory defendants could invoke the clause under the doctrine of equitable estoppel. *Id.* at 1256–57.

We correctly applied equitable estoppel in *Liles*. The *Liles* plaintiffs' Land Sales Act claims relied on the lot purchase contract. The lot purchase contract incorporated the Lands Sales Act disclosure rights and remedies and it was necessary for the plaintiffs to establish the defendants' liability. Without the lot purchase contracts and their incorporation of Land Sales Act disclosure rights and remedies, the plaintiffs would have been unable to bring their claims. The Land Sales Act claims depended on the contractual obligation imposed on the defendants to adhere to Land Sales Act. The plaintiffs, moreover, sought to hold the defendants to the lot purchase contract's terms incorporating the Land Sales Act rights and remedies. Additionally, the nonsignatories that were allowed to enforce the forum-selection clause were officers of Ginn-LA, a signatory to the contract. Further, the plaintiffs' common law fraud claim was based on the defendants' alleged failure to meet a duty set forth in the lot purchase contract to disclose information that related to the titles to the lots. Finally, the plaintiffs sought rescission of the lot purchase contract for relief.

But the case before us is different from *Liles*. Byers does not, on one hand, rely on the terms of the lot purchase contract to assert his claim, but, on the other

18

hand, seek to avoid the enforcement of the forum-selection clause. Moreover, Byers's counterclaim does not rely on the terms of the lot purchase contract to impose liability on the Mortgage Entities. Unlike the plaintiffs in *Liles*, Byers does not attempt to hold the Mortgage Entities to the terms of the lot purchase contract or any obligations under the lot purchase contract. Nor does he seek any relief concerning the lot purchase contract. Instead, he seeks revocation of the mortgage note and restitution for payments previously made on the note.

The Mortgage Entities further argue that the claims rely on the lot purchase contract because if Byers had never entered into the lot purchase contract, there would be no RICO liability. That is, but for Byers entering into the lot purchase contract, he would not have entered into the mortgage note and been a victim of the alleged appraisal fraud. Although Byers would have never entered into the mortgage note without first entering into the lot purchase contract to buy the lot, this but-for relationship is, as we noted above, not enough to warrant the application of equitable estoppel.

Thus, Byers's counterclaim does not rely on the lot purchase contract and the application of equitable estoppel was error.

19

## V. Conclusion[11]

For these reasons, we hold that the district court erred when it determined that the appraisal fraud claims were within the scope of the lot purchase contract's forum-selection clause.  We also hold that the court erred in applying equitable estoppel to allow the Mortgage Entities (nonsignatories to the lot purchase contract) to invoke the lot purchase contract's Bahamian forum-selection clause.  Accordingly, we reverse the district court's judgment granting the motion to dismiss for improper venue and remand for proceedings consistent with this opinion.

REVERSED and REMANDED.

---

[11] To the extent that the Mortgage Entities argue that Byers failed to properly plead his RICO claims, we decline to address the argument because the district court has not yet ruled on the 12(b)(6) motion to dismiss.  We prefer to leave the issue to the district court to address in the first instance.