[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14770
_____

D.C. Docket No. 1:11-cv-21065-DLG

XENA INVESTMENTS, LTD.,

Plaintiff-Appellant,

versus

MAGNUM FUND MANAGEMENT LTD.,
DAVID FRIEDLAND,
DION FRIEDLAND,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 14, 2013)

Before MARCUS, HILL, and SILER,[*] Circuit Judges.

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

HILL, Circuit Judge:

This is an appeal from the district court's grant of defendants-appellees, Magnum Fund Management, Ltd. (MFM) and David Friedland's (David), joint motion to dismiss, and defendant-appellee Dion Friedland's (Dion) motion to dismiss the plaintiff-appellant, Xena Investments, Ltd.'s (Xena), complaint for lack of personal jurisdiction and improper venue.

The merits of Xena's claims in its complaint arise from loans made by MFM to a commercial real estate hedge fund managed by MFM in the British Virgin Islands (BVI). Xena complains that, contrary to what it had been promised, the defendants-appellees improperly and impermissibly secured these loans, giving them priority status over Xena's shares in the fund.

The district court did not reach the merits of Xena's claims. It dismissed its complaint, finding that it had no jurisdiction or authority to determine the priority of foreign parties entitled to, or payments made from, a foreign hedge fund. Under *de novo* review, we affirm the judgment of the district court.

I.

As set forth in its 2011 complaint, Xena is a Cayman Islands corporation. Its principal place of business is in Grand Cayman, Cayman Islands. Xena alleges claims for fraud, negligent misrepresentation, and fraudulent inducement against

2

MFM, Dion, and David, and for breach of contract, and declaratory judgment against MFM, for actions occurring in 2008.

By declaration of Dion, submitted in support of his motion to dismiss, MFM is incorporated in the Bahamas, with its principal place of business in the Bahamas. It conducts no business in Florida.[1] Dion is the principal decision maker for MFM. He claims that he does not reside in Florida; does not transact business in Florida or derive any income in Florida; does not maintain any banking or financial accounts in Florida; and, pays no taxes in Florida or the United States.[2]

In David's declaration, submitted in support of his joint motion to dismiss with MFM, David claims that MFM entered a consulting agreement with Magnum US Investments, Inc. (MUS) in 1996. MUS is a Florida corporation. David is Dion's son, and president of MUS. David is a Florida resident.[3]

---

[1] In its joint motion to dismiss with David, MFM argues that it is not licensed or qualified to do business in Florida; has no office or employees in Florida; does not operate, conduct, engage in, or carry on a business or business venture in Florida; has no office address or telephone number in Florida; has no appointed agent for service in Florida; pays no taxes in Florida; and, has no banking or other financial account in Florida.

[2] Xena claims that both MFM and Dion were served personally in Florida. MFM and Dion dispute this. As to MFM, Xena claims that a MUS employee in Miami was authorized to, and did in fact, accept service on behalf of MFM. The employee later denied acceptance of service by affidavit. Xena claims Dion was personally served at his apartment in Aventura, Florida. Dion claims he was in Florida that day, but contends he was in Hallandale, Florida, at his grandson's tennis match.

[3] MUS is not a party in this action. By his declaration, David has never been an employee, officer, or director of MFM.

3

Pursuant to the consulting agreement, David declares that MUS performs certain functions on behalf of MFM (research, due diligence, legal services, and negotiations), but is powerless to bind MFM in any way or sign any documents on its behalf.[4]

Xena alleges in its complaint that it owns shares in Spectrum Galaxy Fund, Ltd. (Spectrum). Spectrum is incorporated with limited liability in the BVI. One of Spectrum's subsidiary funds, MG Secured Debt Fund (MGSDF), is a hedge fund participating in loans made to commercial real estate developers. MFM is the investment manager of MGSDF.

According to its complaint, Xena's shareholder interest in MGSDF was acquired in 2009, pursuant to a deed of assignment, from Pentagon Select Ltd. (Pentagon). Pentagon is incorporated and registered in the BVI. In 2008, the value of Xena's (then Pentagon) shares in MGSDF was estimated to be approximately $21 million.

Xena's complaint alleges that the fraud perpetrated by MFM, Dion, and David arose in 2008 in an attempt by Xena (then Pentagon), to redeem its $21

---

[4] Xena argues that, under agency principles, this consulting agreement is sufficient to confer jurisdiction over MFM. *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264 (11th Cir. 2002). Xena argues that, by reason of this consulting relationship with MUS, MFM regularly transacts business in Florida.

million in shares in MGSDF.  At the time, out of economic necessity, MFM had made certain loans to MGSDF.

Xena claims in its complaint that it relied detrimentally upon MFM, Dion, and David's intentional and negligent misrepresentations to it that the MFM loans were unsecured, and would not be secured.  It was Xena's understanding that the outstanding loans had no automatic priority over Xena's redemption rights, and the loans would remain inferior to Xena's rights.

Thus satisfied, Xena alleges in its complaint that it agreed to decline to exercise its redemption rights for two years.  This agreement was memorialized in a 2008 Forbearance Agreement between MFM and Xena (then Pentagon).[5]  The Forbearance Agreement contains a mandatory forum-selection clause (paragraph 10) which reads:  "This letter shall be governed by and construed in accordancewith English law and any dispute arising out of, or in connection with, the terms of this letter shall be subject to the exclusive jurisdiction of the English Courts." [6]

---

[5] As we do not reach the merits of Xena's claims, we do not examine the specific terms of the Forbearance Agreement, other than its forum-selection clause, as it relates to this jurisdictional appeal.

[6] The record reflects that a second document, the Subscription (Private Offering) Agreement between Spectrum/MGSDF and Pentagon/Xena also contains a forum-selection clause.  It states that the parties shall irrevocably submit to the jurisdiction of the courts of the BVI and all shall be decided under the laws of the BVI.

The causes of action set forth in Xena's complaint are: (1) for material, fraudulent misrepresentations during negotiations for the Forbearance Agreement in 2008, that the loans were unsecured, and would remain unsecured, by MFM, Dion, and David; (2) for material, negligent misrepresentations during the same negotiations that the loans were unsecured, and would remain unsecured, by MFM, Dion, and David; (3) for fraudulent inducement to enter the Forbearance Agreement based on misrepresentations that the loans were unsecured, and would remain unsecured, by MFM, Dion, and David; if not for these misrepresentations, Xena would not have entered the agreement; (4) for breach of contract under the terms of the Forbearance Agreement against MFM; and (5) for a declaratory judgment against MFM for threatening to withhold ten percent of Xena's redemption proceeds whenever actually paid.[7]

---

Finally, a third document contained in the record, the Deed of Assignment between Pentagon and Xena, also contains a forum-selection clause. It states that the parties shall irrevocably submit to the jurisdiction of the courts of the BVI. Disputes shall be decided under the laws of the BVI, and, courts of the BVI shall have exclusive jurisdiction to settle any dispute or claim that arises out of or in connection with the assignment of shares from Pentagon to Xena.

[7] As the district court stated in its order:

> The alleged misrepresentations concern whether the loans [MFM] made to [MGSDF] were unsecured and would remain unsecured. Xena also claims that Defendants fraudulently induced them into the Forbearance Agreement they reached with [MFM] in December 2008, and if not for Defendants' misrepresentations, Xena would not have entered into the agreement. In the alternative, Xena claims [MFM] breached the Forbearance Agreement. Lastly Xena seeks declaratory judgment for [MFM]

According to the complaint, two years later, in 2010, during negotiations to extend the Forbearance Agreement, Xena learned that, contrary to what Xena had been promised in 2008, MFM, Dion, and David had converted the loans from MFM to MGSDF to a secured status, with priority over Xena's shares.  Xena claims that this conversion was memorialized in a revised loan document signed by Dion on behalf of MFM and MGSDF, dated December 2008, the same day as the Forbearance Agreement was executed.[8]

Xena alleges in its complaint that this unsavory discovery caused it to be concerned about additional misconduct possibly committed without its knowledge. As a result, it commenced insolvency proceedings in 2010 against MGSDF in the BVI.  Joint liquidators were appointed to further investigate the financial affairs of MDSDF.

## II.

After MFM, Dion, and David submitted their declarations and motions to dismiss for lack of personal jurisdiction and improper venue, Xena submitted a

---

threatening to withhold ten percent of the Redemption proceeds whenever they are actually paid.

[8] Xena alleges in its complaint that it is irrelevant whether the revised loan agreement was backdated two years by the defendants, or that it was actually executed on the same date as the Forbearance Agreement was signed.

memorandum of law opposing the motions.  It also submitted an affidavit of Yonaton Aronoff, one of Xena's attorneys.

Aronoff's affidavit states that the attached six exhibits are true and correct copies of certain websites, webpages and an online article.  The district court found the Aronoff affidavit inadmissible as hearsay; that there was no evidence that the information on these websites was true and correct; and that Aronoff was not in a position to verify their accuracy.[9]  In the alternative, the district court found, that even if these exhibits were not hearsay, they had no prima facie value, were insufficient to prove systematic contacts by MFM in Florida, and therefore were insufficient to assert jurisdiction over MFM in Florida.[10]

The district court held that it lacked personal jurisdiction over MFM and Dion, as Xena failed to rebut evidence presented by MFM and Dion to the contrary.  Thereafter the district court entered an order of dismissal of Xena's complaint for lack of personal jurisdiction.

The district court also upheld the forum-selection clause contained in the Forbearance Agreement, in that any disputes between Xena, MFM, Dion, and

---

[9] Xena did not offer any rebuttal to the hearsay ruling by the district court.

[10] Xena also complains that the district court granted the motions to dismiss without conducting any jurisdictional hearing, or permitting any jurisdictional discovery.  It claims that disputed facts in the record should have been subject to discovery.  MFM, Dion, and David argue that, during the pendency of the case in the district court, Xena:  (1) neither moved for an evidentiary hearing regarding personal jurisdiction; (2) nor did it move to compel jurisdictional discovery from the defendants.

David, shall be subject to the exclusive jurisdiction of the English Courts. It dismissed Xena's action for improper venue and denied all other pending motions as moot.[11]

This appeal follows.

### III.

There are only two issues before us on appeal:

A. Whether or not the district court correctly dismissed Xena's complaint for lack of personal jurisdiction over MFM and Dion; and

B. Whether or not the district court correctly dismissed Xena's complaint for improper venue under the forum-selection clause contained in the Forbearance Agreement against MFM, Dion, and David.

### IV.

We review a dismissal for lack of personal jurisdiction *de novo*. *Alexander Proudfoot Co. World Headquarters L.P. and APCO, Inc. v. Thayer*, 877 F.2d 912, 916 (11th Cir. 1989). When a district court does not conduct a jurisdictional hearing on a motion to dismiss, a plaintiff must establish a prima facie case of personal jurisdiction over the nonresident defendant. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990).

---

[11] This includes the defendants's motion to quash service of process, due to insufficient service of process.

9

We review *de novo* a dismissal for improper venue involving a forum-selection clause in an international agreement. *See Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290-91 (11th Cir. 1998).

V.

A.  Motion to Dismiss for Lack of Personal Jurisdiction

Here, the district court, in examining MFM and David's joint motion to dismiss, accepted the allegations contained in Xena's complaint as true and construed the complaint in its favor. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929, 940 (2007).  It applied the same rationale when conflicts arose between the factual allegations contained in Xena's affidavits, and the declarations of the three defendants. *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

1.  MFM

In its complaint, Xena alleged that, upon information and belief, MFM is a foreign, non-Cayman Islands corporation, with offices in Miami, Florida, and that MFM conducts business in Florida.  In its motion to dismiss, MFM refutes these assertions in detail.  *See* note 1 *supra*.

David's declaration supports and reaffirms MFM's position as a foreign corporation.  As president of MUS, David is unable to bind MFM in any way, or sign documents on its behalf.

10

Dion's declaration states that he is a foreign citizen.  He is the decision maker for MFM, a foreign corporation.

When the burden of proof shifted back to Xena, Xena responded with a memorandum of law opposing the motions to dismiss, and submitted the affidavit of its counsel, Mr. Aronoff.  The district court dismissed the six exhibits attached to Aronoff's affidavit as hearsay, applying the legal standards set forth above.  It found that Xena had not established a prima facie case supporting personal jurisdiction over MFM, and granted its motion to dismiss.  We agree.[12]  In the chain of entities, there is not one Florida entity before us.  Every entity in this appeal is a foreign corporation, including MFM.

2.  Dion

Xena alleges in its complaint that Dion is an individual that resides in Aventura, Florida.  Dion, in response, declares that he is a foreign citizen whose principal place of residence is outside the United States.  For reasons previously

---

[12] Xena argues that *Meier ex rel. Meier*, 288 F.3d at 1264, is applicable here.  Xena claims that the consulting agreement between MFM and MUS, on its own, under agency principles, is enough to assert jurisdiction over MFM, and prove that MFM is present and doing business in Florida.  *Id.*  Through MUS, Xena contends, MFM is holding itself out as doing business in Florida, and MUS is sufficiently present in Florida, as the agent of MFM, to bind MFM.  *Id.*

We disagree.  In *Meier*, there was a parent-subsidiary relationship between the foreign corporation and its Florida subsidiary.  *Id.* at 1267.  The Florida subsidiary in *Meier* had no identity of its own, and operated solely for the benefit of its parent foreign corporation.  *Id.* at 1272.  There were also significant financial ties between the *Meier* foreign corporation and its Florida subsidiary.  *Id.* at 1273.  None of these distinctions are present here.

11

stated, there was evidence that Dion has no continuous or systematic contact with Florida.

Thereafter, the burden of proof shifted back to Xena to prove that Dion had a nexus of minimum contacts with Florida. The district court found that Xena had failed to offer any proof in rebuttal of Dion's declaration.

As the district court found that there was no "battle of affidavits," it was not "inclined to give greater weight . . . to the plaintiff's version" of the facts. *See Psychological Res. v. Gerleman*, 624 F. Supp. 483, 486 (N.D.Ga. 1985). The district court determined that Xena had failed to establish a prima facie showing of personal jurisdiction over Dion. Xena's claims against Dion were due to be dismissed for lack of personal jurisdiction.

We disagree. Under our *de novo* review, the record reflects that Xena submitted evidence that it had established personal jurisdiction over Dion under Florida's transient jurisdiction rule, which is the exercise of jurisdiction based solely on a "non-resident [] when [the] non-resident is properly served with service of process while voluntarily present in the state." *Meier v. Sun Int'l. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *Keveloh v. Carter*, 699 So. 2d 285, 288 (Fla. Dist. Ct. App. 1997 (citing *Burnham v. Super. Ct. of Cal.*, 495 U.S. 604 (1990)). Although Dion disputes this, the district court was required to accept Xena's allegations as true, and should not have dismissed the claims against him

12

for lack of personal jurisdiction. See *Morris*, 843 F.2d at 492. Nevertheless, we need not reach this issue, as the district court correctly dismissed Xena's claims against Dion for lack of improper venue, discussed in the following Section B of this opinion.

B. Motions to Dismiss for Improper Venue

As the district court found, forum-selection clauses are presumed to be valid and enforceable "where the underlying transaction is fundamentally international in character." *Lipcon*, 148 F.3d at 1295. These clauses will not be upheld if there is a "strong showing that enforcement would be unfair or unreasonable under the circumstances," but the party attempting to invalidate a forum-selection clause has a heavy burden of proof. *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009).

As the district court stated:

> Forum selection clauses and choice of law clauses will be found unreasonable and unenforceable "only when:   (1) their formation was induced by fraud or overreaching; (2) the plaintiff would effectively be deprived of its day in court because of the inconvenience and unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy." *Lipcon*, 148 F.3d at 1296.  Also, a plaintiff must specifically allege that the forum selection clause was included in the agreement because of fraud when seeking to invalidate it. *See id.* at 1296 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594-95).

13

Xena argues that its claims are broader than the Forbearance Agreement.  It claims they do not necessarily arise out of, or in connection with the Forbearance Agreement.  Xena contends that forum-selection clauses are not limitless, and, as Dion and David are non-signatories to the Forbearance Agreement, they cannot now invoke its forum-selection clause pertaining to English courts and English law.[13]  Xena also argues that because it was fraudulently induced into the agreement the clause should not be binding, and therefore, venue in Florida is proper.

Relying upon the standards of law set forth above, the district court found, that due to the presumption of validity of the forum clause contained in the Forbearance Agreement, and Xena's failure to challenge the clause specifically, the forum-selection clause was valid.  It dismissed all of Xena's claims on the basis that Florida is not a proper venue.

---

[13] At oral argument, Xena offered *Bahama Sales Assoc., LLC v. Byers*, 701 F.3d 1335 (11th Cir. 2012), in support of its position that its claims surpass the limits of the Forbearance Agreement.  In *Bahama Sales*, Byers purchased a lot in the Bahamas.  The parties signed a lot purchase contract that contained a forum-selection clause and a choice-of-law clause that required all disputes to be litigated in Bahamian courts under Bahamian law.  *Id.* at 1338. Byers's mortgage financing note also contained a forum-selection clause and a choice-of-law clause.  *Id.*  That clause required that all disputes be litigated in Florida under Florida law.  *Id.* When Byers failed to make payments on the mortgage note, Bahama Sales sued him in the Middle District of Florida.  *Id.*  The district court dismissed Bahama Sales's breach-of-contract claim against Byers for lack of subject-matter jurisdiction.  *Id.* at 1339.  This court reversed the district court on the basis that the forum-selection clause of the secondary document, the mortgage note, requiring all disputes to be resolved in Florida, controlled.  *Id.* at 1341.  Xena's reliance upon *Bahama Sales* is misplaced.  The secondary agreements here, unlike those in *Bahama Sales*, do not require that all disputes be resolved in Florida.  They direct the parties to the BVI.

14

The district court found the same true for Dion, as MFM's principal decision maker. Also, as representations made by David led to the execution of the Forbearance Agreement, the district court found that the forum-selection clause also controlled.

Here, the district court enforced the forum-selection clause of the Forbearance Agreement, requiring all disputes be resolved under English law in English courts. Under our *de novo* review, the district court correctly enforced the forum-selection clause against the signatories to the Forbearance Agreement, Xena and MFM, and also the closely-related parties, Dion and David.[14]

### VI.

This appeal appears to be a case of international forum shopping by Xena, considering its previous instigation in 2010, of insolvency proceedings against MGSDF in the BVI. This is an international dispute between foreign entities. Only David lives in Florida. His father, Dion, is a foreign citizen.

If the Forbearance Agreement is in effect, it appears that the parties must go to the English Courts. If the Forbearance Agreement is not in effect, then perhaps

---

[14] Xena argues that its claims are far broader than just those found in the Forbearance Agreement (the primary document). Yet the forum-selection clauses in the Subscription Agreement and the Assignment Agreement (the secondary documents) require that all disputes be resolved under BVI law in BVI courts. Even if the primary document is not controlling, the secondary documents also direct the parties to a foreign court. *See Bahama Sales*, 701 F.3d at 1341.

the parties must go to the courts of the British Virgin Islands.  Either way, they have no day in court in Florida.

This is a simple case involving sophisticated international parties and an international fund.  Under our *de novo* review, the parties appear to be free to litigate on foreign soil -- but that issue is not before us.  What is before us is the correct decision by the district court -- the parties are not free to litigate in Florida.

## VII.

The judgment of the district court is affirmed.

AFFIRMED.